UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE LEAPFROG ENTERPRISE, INC. SECURITIES LITIGATION, _____/ This Document Relates to: All Actions. | Case No. 15-cv-00347-EMC **ORDER RE SUPPLEMENTAL BRIEFING AND/OR EVIDENCE** Docket No. 169 |

The Court has reviewed Lead Plaintiff's motion for preliminary approval and accompanying submissions. Having done so, the Court hereby orders the parties to file supplemental briefing and/or evidence as follows. (A joint filing is preferred. This does not preclude the parties from providing their separate positions within the joint filing.) The parties' filing shall be made **within one week of the date of this order**.

A. <u>Maximum Value of the Case</u>

Lead Plaintiff states that its expert "estimates that the maximum recoverable damages under the alleged Class Period of May 5, 2014, through June 11, 2015, are $89 million." Mot. at 10 n.4. Lead Plaintiff shall explain whether this estimate includes *all* of the claims it has ever asserted in this case or just the two accounting claims (*i.e.*, the goodwill and long-lived asset claims). *See, e.g.*, Docket No. 88 (order) (dismissing claims based on allegedly false and misleading statements about LeapFrog's inventory, the rollout of LeapTV, and LeapFrog's financial guidance).

B. <u>Risks of Litigation</u>

In its motion, Lead Plaintiff states that one risk of litigation with respect to the long-lived asset claim is the difficulty in proving that Lead Plaintiff or other putative class members' losses

were due to the disclosure about the long-lived asset impairment as opposed to some other reason. *See* Mot. at 11 ("[B]ecause LeapFrog's stock price declined in the wake of the Company's announcement of its disappointing fiscal year 2015 financial results, an announcement that also contained substantial commentary on issues not directly related to taking a charge for LeapFrog's long-lived asset impairment, Defendants would have argued that facts other than the announcement of the impairment were the proximate cause of Lead Plaintiff's losses."). The parties shall address what possible "other" reasons for the losses there could have been.

C. <u>Net Settlement Fund</u>

Under the Settlement Agreement, "Net Settlement Fund" is defined as "the Settlement Fund less: (i) Court-awarded attorneys' fees and expenses; (ii) Notice and Administration Expenses; (iii) Taxes; and (iv) any other fees or expenses approved by the Court." Sett. Agmt. § III, ¶ 1.18. How much in taxes do the parties anticipate will be deducted from the gross settlement fund?

D. <u>Average Recovery</u>

Lead Plaintiff indicates that the average recovery per share is estimated to be $0.125 before deduction of attorney's fees and expenses and $0.083 after such deduction. What is the average recovery when not only attorney's fees and expenses are deducted but also claim administration fees and expenses (the full $350,000 contemplated by the Settlement Agreement) and taxes?

E. <u>Attorney's Fees and Expenses</u>

Although the Court is not requiring Lead Plaintiff, at this time, to file a motion for attorney's fees and expenses, more information about the fees and expenses is needed than that contained within the pending motion. For example:

- What is the asserted lodestar? (An estimate is acceptable.)
- What is the range of hourly rates?
- What is the number of hours on which the lodestar is based?
- What were the major litigation tasks and how much time was spent on each? (Estimates are acceptable.)
- What and how much were the major expenses?

2

F.  Incentive Award

What is the factual basis for the requested $5,600 incentive award?

G.  Proofs of Claims

1.  Settlement Agreement § III, ¶ 7.6

The Settlement Agreement provides that "Lead Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive what Lead Counsel deem to be *de minimis* or formal or technical defects in any Proof of Claim submitted." Sett. Agmt. § III, ¶ 7.6. The Court has some concerns about the implications of this provision. For example, should Lead Counsel have an obligation to give the Claims Administrator, prior to the Claims Administrator's review of Proofs of Claims, some guidelines as to what should be considered *de minimis* or formal or technical defects that should be waived? Should Lead Counsel have an obligation to give advice if such advice is requested by the Claims Administrator, and is the Claims Administrator obligated to follow that advice?

2.  Settlement Agreement § III, ¶ 7.7(b)

The Settlement Agreement gives Lead Counsel discretion as to whether a late-filed Proof of Claim shall be accepted. *See* Sett. Agmt. § III, ¶ 7.7(b). Should there be an express provision that such discretion shall be reasonably exercised?

3.  Settlement Agreement § III, ¶ 7.7(d)-(e)

The parties shall clarify the "appeals" process for deficient Proofs of Claims. *See* Sett. Agmt. § III, ¶ 7.7(d)-(e). For example:

- Does a claimant have an avenue for appealing a decision by the Claims Administrator and/or Lead Counsel that a deficiency is not curable?
- For a curable deficiency, is it correct that (a) the claimant is given an opportunity to cure and (b) only if the Claims Administrator and/or Lead Counsel determine that the attempt to cure is not successful does the claimant have an opportunity to seek judicial review?

H.  Plan of Allocation

Lead Plaintiff represents that, under the Plan of Allocation, "LeapFrog common stock must

3

have been purchased or otherwise acquired during the Class Period [May 5, 2014, to June 11, 2015] and held through the end of trading on May 15, 2015 (Friday)." Mot. at 16. Lead Plaintiff shall explain the factual and/or legal basis for the May 15, 2015, restriction (*e.g.*, is this related to the alleged corrective disclosure dates?). Is this consistent with the Plan of Allocation described in the Settlement Notice?

I. <u>Defendants' Right to Withdraw from the Settlement</u>

Defendants have the right to withdraw from the settlement in the event that the requests for exclusion from the settlement class exceed certain agreed-upon criteria. *See* Sett. Agmt. § III, ¶¶ 11.2-.3. This right is memorialized in a supplemental agreement. The parties shall lodge a copy of the supplemental agreement with the Court for in camera review.

J. <u>Means of Notice</u>

In its motion, Lead Plaintiffs refers to mail notice and publication/transmission notice but not email notice or DTC notice, which is discussed in the Joaquin Declaration (*i.e.*, the declaration from the proposed Claims Administrator). *See* Joaquin Decl. ¶¶ 4, 12-13. Lead Plaintiff shall clarify whether these other means of notice shall also be provided. In addition, Lead Plaintiff shall clarify whether the publication notice in *The Wall Street Journal* is a one-day publication. *Compare* Joaquin Decl. ¶ 11 (noting that the Summary Notice will "be posted with the *BusinessWire*, an online newswire service, where it will be available for a month").

K. <u>Reminder Notice</u>

The parties shall address whether it is worth having a reminder notice sent to putative class members.

L. <u>Content of Notice</u>

    1. <u>Settlement Notice</u>

The Court has comments and/or proposed edits on the Settlement Notice (*i.e.*, the long-form notice that will be mailed), *see* Prop. Order, Ex. A-1, below.

**Page 1, ¶ 1.** The sentence regarding average recovery should be bolded.

**Page 1, ¶ 4.** The entire paragraph – regarding the need to submit a claim form to obtain a share of the settlement – should be bolded.

4

**Page 1, ¶ 5.** The sentence referring to the "Class Period" should provide the exact dates for the Class Period.

**Page 2, ¶ 3.** The dollar amount of attorney's fees (not just the percentage) should be specified.

**Page 3, chart.** The part of the chart explaining the objection option should clarify that an objector should still fill out a Proof of Claim or she will not receive any distribution from the net settlement fund.

**Page 4, Table of Contents.** The items currently numbered 19 and 20 regarding objections should be moved up so that they follow the items on requests for exclusion. (The same should be done for the substantive sections.)

**Page 5, Table of Contents**. The item currently numbered 24 regarding "do nothing" should be moved up so that it follows the items on objections. (The same should be done for the substantive sections.)

**Page 9, Question 8.** The specific dollar amounts for deductions that could be made from the gross settlement fund should be specified (*e.g.*, attorney's fees and expenses, claims administration fees and expenses).

**Page 10, Question 10.** The following phrase should be bolded: "you must submit supporting documents."

**Page 11, Question 13.** Can a Settlement Class member submit a request for exclusion online and, if not, why not?

**Page 11, Question 17.** The exact dollar amount of attorney's fees should be specified.

**Page 13, Question 19.** The last sentence in Question 19 should be rephrased to state as follows: "Even if you object, you ~~can~~ **must** still submit a Proof of Claim to be eligible for a cash payment from the Settlement. ~~However, if~~ If you do not submit a claim form, you will not receive a payment."

**Page 17, footnote 3.** Is there a typo in the last sentence – *i.e.*, is the June 15 date correct?

2. <u>Summary Notice</u>

**Page 1, ¶ 2.** The exact dollar amount of attorney's fees and expenses should be specified.

3. Claim Form

The Court has comments and/or proposed edits on the Claim Form, *see* Prop. Order, Ex. A-2, below.

**Page 3, ¶ 1.** Is the September 9 date correct?

**Page 3, ¶ 3.** The last sentence regarding failure to provide documentation should be bolded.

**Page 3, ¶ 5.** The sentence regarding manual signing should be bolded.

**Page 6.** Is the September 9 date correct?

M. Proposed Order Granting Preliminary Approval

The Court has a few comments and/or proposed edits below.

**Prop. Order ¶ 3.** This paragraph states that the Court is certifying the Settlement Class. However, in ¶ 7, the parties seem to concede that certification should ultimately be determined at the final approval hearing. *See* Prop. Order ¶ 7(c) (providing that a hearing shall be held to consider, *inter alia,* "whether the Settlement Class should be certified"). The parties should address this conflict.

**Prop. Order ¶ 16.** Language should be added to this paragraph so that it reads as follows (the new language is underlined): "Lead Counsel shall, at least fourteen (14) calendar days before the Settlement Hearing, file with the Court proof of mailing of the Notice and Proof of Claim, both to putative class members individually and to nominees for putative class members."

**Prop. Order ¶ 17**. Language should be added to this paragraph to clarify how long the publication/transmission notice will be available on *The Wall Street Journal* and *BusinessWire*.

**Prop. Order ¶ 17(a).** The parties should consider whether to add a ¶ 17(a) to cover the additional means of notice identified in the Joaquin Declaration (*i.e.*, email notice and DTC notice).

**Prop. Order ¶ 23.** This paragraph provides that a request for exclusion must be made such that it is received at least 3 weeks prior to the final approval hearing. Depending on when the final approval hearing is, this could mean that there are different times for Settlement Class members to file requests for exclusion or Proofs of Claims. This could be confusing for

Settlement Class members.  Is it simpler to have just one date by which the Settlement Class members must respond to the notice – whether to file a Proof of Claim, an objection, and/or a request for exclusion?

**IT IS SO ORDERED**.

Dated: February 28, 2018

_____
EDWARD M. CHEN
United States District Judge