ROBBINS GELLER RUDMAN
    & DOWD LLP
SHAWN A. WILLIAMS (213113)
WILLOW E. RADCLIFFE (200087)
MATTHEW S. MELAMED (260272)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
willowr@rgrdlaw.com
mmelamed@rgrdlaw.com
              -and-
ELLEN GUSIKOFF STEWART (144892)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

MOTLEY RICE LLC
JAMES M. HUGHES (*pro hac vice*)
WILLIAM S. NORTON
CHRISTOPHER F. MORIARTY (*pro hac vice*)
28 Bridgeside Blvd.
Mount Pleasant, SC  29464
Telephone:  843/216-9000
843/216-9450 (fax)
jhughes@motleyrice.com
bnorton@motleyrice.com
cmoriarty@motleyrice.com

Co-Lead Counsel for Lead Plaintiff

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE LEAPFROG ENTERPRISES, INC. SECURITIES LITIGATION | Master File No. 3:15-cv-00347-EMC |
| | **CLASS ACTION** |
| This Document Relates To: | **LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS, AND MEMORANDUM IN SUPPORT THEREOF** |
| ALL ACTIONS. | |
| | Date:       October 25, 2018 |
| | Time:       1:30 p.m. |
| | Courtroom: 5, 17th Floor |
| | Judge:      Hon. Edward M. Chen |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................................ii

NOTICE OF MOTION...............................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................2

PRELIMINARY STATEMENT .................................................................................................2

PRELIMINARY APPROVAL AND THE NOTICE PROGRAM ...........................................3

ARGUMENT ...............................................................................................................................6

I.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE UNDER THE
    APPLICABLE STANDARDS AND SHOULD BE APPROVED.................................................6

    A.  The Standards For Final Approval Of Class Action Settlements ...................................6

    B.  Application Of The Ninth Circuit's Criteria Supports Final Approval Of The
        Settlement ..................................................................................................................8

        1.  The Strength of Lead Plaintiff's Case and the Risks Associated with
            Continued Litigation ...........................................................................................8

            a.  Business judgment defenses ...................................................................9

            b.  Scienter defenses....................................................................................9

            c.  Loss causation and damages challenges ..............................................10

            d.  Previously dismissed claims ................................................................12

                i.   Goodwill ..................................................................................12

                ii.  LeapPad inventory, LeapTV launch, and financial guidance ....12

        2.  The Complexity, Expense, and Likely Duration of Further Litigation..............13

        3.  The Risk of Maintaining Class-Action Status Through Trial...........................13

        4.  The Amount Offered in the Settlement.............................................................14

        5.  The Extent of Discovery Completed and the Stage of the Proceedings ...........15

        6.  The Experience and Views of Lead Counsel ....................................................16

        7.  Reaction of the Settlement Class to Date.........................................................18

II. THE PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND IS FAIR, ADEQUATE, AND
    REASONABLE AND SHOULD BE APPROVED ...............................................................19

CONCLUSION ........................................................................................................................21

# TABLE OF AUTHORITIES

**CASES**

*Brotherton v. Cleveland,*
  141 F. Supp. 2d 894 (S.D. Ohio 2001) .................................................................................. 19

*Churchill Village, L.L.C. v. General Electric,*
  361 F.3d 566 (9th Cir. 2004) ............................................................................................... 7

*City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.,*
  856 F.3d 605 (9th Cir. 2017) ............................................................................................... 12

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992) ...................................................................................... 6, 8, 19

*DeStefano v. Zynga, Inc.,*
  No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ........................... 5, 13, 16

*Dura Pharmaceuticals, Inc. v. Broudo,*
  544 U.S. 336 (2005) ............................................................................................................ 10

*Eisen v. Porsche Cars North America, Inc.,*
  No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ...................... 16

*Ellis v. Naval Air Rework Facility,*
  87 F.R.D. 15 (N.D. Cal. 1980) ............................................................................................. 17

*Garner v. State Farm Mutual Automobile Insurance Co.,*
  No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................ 6

*Glickenhaus & Co. v. Household Interntaional, Inc.,*
  787 F.3d 408 (7th Cir. 2015) ............................................................................................... 13

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) .......................................................................................... 7, 18

*Harris v. Vector Marketing Corp.,*
  No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ................................... 17

*In re Amgen Inc. Securities Litigation,*
  No. CV 7-2536 PSG (PLAx), 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .................. 10, 18

*In re Bank of America Corp. Securities, Derivative, & ERISA Litigation,*
  772 F.3d 125 (2d Cir. 2014) ................................................................................................. 4

*In re ECOtality, Inc. Securities Litigation,*
  No. 13-cv-03791-SC, 2015 WL 5117618 (N.D. Cal. Aug. 28, 2015) .................................... 6

*In re Immune Response Securities Litigation,*
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................................ 10

*In re Linkedin User Privacy Litigation,*
  309 F.R.D. 573 (N.D. Cal. 2015) ......................................................................................... 13

*In re Mego Financial Corp. Securities Litigation,*
  213 F.3d 454 (9th Cir. 2000) ...................................................................................... 7, 14, 15

LEAD PL.'S NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
& PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS, & MEM. IN SUPP. THEREOF
CASE NO. 3:15-CV-00347-EMC

ii

*In re Mercury Interactive Corp. Securities Litigation*,
   618 F.3d 988 (9th Cir. 2010) ..................................................................................... 5

*In re Omnivision Technologies, Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................... 14, 15, 17, 19

*In re Pacific Enterprises Securities Litigation*,
   47 F.3d 373 (9th Cir. 1995) ..................................................................................... 8

*In re Portal Software, Inc. Securities Litigation*,
   No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) .................. 7

*In re TracFone Unlimited Service Plan Litigation*,
   112 F. Supp. 3d 993 (N.D. Cal. 2015) ................................................................... 7

*In re Warner Communications Securities Litigation*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ....................................................................... 11

*International Brotherhood of Electrical Workers Local 697 Pension Fund v. International Game
   Technology, Inc.*,
   No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ................................. 15

*Janus Capital Group, Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011) ............................................................................................... 13

*Knapp v. Art.com, Inc.*,
   283 F. Supp. 3d 823 (N.D. Cal. 2017) ................................................................... 8

*Linney v. Cellular Alaska Partnership*,
   151 F.3d 1234 (9th Cir. 1998) ........................................................................... 7, 8

*Linney v. Cellular Alaska Partnership*,
   No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) ...................... 17

*Low v. Trump University, LLC*,
   881 F.3d 1111 (9th Cir. 2018) ................................................................................. 4

*Luna v. Marvell Technology Group*,
   No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ................. 4

*McPhail v. First Command Financial Planning, Inc.*,
   No. 05cv179-IEG-JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ................. 15

*Mendoza v. Tucson School District No. 1*,
   623 F.2d 1338 (9th Cir. 1980) ................................................................................. 4

*Mossberg v. IndyMac Fin., Inc.*,
   No. CV07-1635-GW(VBKx), 2013 WL 12324206 (C.D. Cal. Jan. 28, 2013) ................................. 8

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ................................................................................................. 4

*National Rural Telecommunications Cooperative*,
   221 F.R.D. 523 (C.D. Cal. 2004).................................................................. 8, 16, 18

*Nguyen v. Radient Pharmaceuticals Corp.*,
   No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293 (C.D. Cal. May 6, 2014) .......................... 11

*Officers for Justice v. Civil Service Commission*,
    688 F.2d 615 (9th Cir. 1982) ................................................................ 6, 7, 8, 18

*Redwen v. Sino Clean Energy, Inc.*,
    No. CV 11-3936 (SSx), 2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013) ............................ 19

*Retta v. Millennium Products, Inc.*,
    No. CV15-1801 PSG AJWx, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) ...................................... 18

*Rodriquez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) .................................................................... 16, 17

*Satchell v. Federal Express Corp.*,
    No. C03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ...................................... 17

*Torrisi v. Tucson Electric Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) .................................................................... 7, 13

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ...................................................................... 6

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ...................................................................... 14

**STATUTES**

15 U.S.C. § 78u-4(a)(7) ................................................................................ 5

**RULES**

Fed. R. Civ. P. 23(c)(1)(C) .......................................................................... 14

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................ 4

Fed. R. Civ. P. 23(e)(1) ................................................................................ 4

LEAD PL.'S NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
& PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS, & MEM. IN SUPP. THEREOF
CASE NO. 3:15-cv-00347-EMC

iv

## NOTICE OF MOTION

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 25, 2018, at 1:30 p.m., or as soon thereafter as it may be heard, Lead Plaintiff KBC Asset Management NV ("KBC" or "Lead Plaintiff"), on behalf of itself and all members of the Settlement Class, will respectfully move this Court for orders, pursuant to Rule 23 of the Federal Rules of Civil Procedure: (1) granting final approval of the proposed Settlement of the Action; and (2) approving the proposed Plan of Allocation for the net proceeds of the Settlement.

This motion is supported by the following memorandum of points and authorities, the accompanying Joint Declaration of Willow E. Radcliffe and James M. Hughes, dated July 25, 2018 ("Joint Declaration" or "Joint Decl."), and the exhibits attached thereto, the Stipulation of Settlement dated February 22, 2018 (the "Stipulation"), all other pleadings and matters of record, and such additional evidence and testimony as may be presented before, at, or after the hearing.[1]

Proposed orders will be submitted with Lead Plaintiff's reply submission on October 11, 2018, after the August 8, 2018 deadline for requesting exclusion or objecting has passed.

## STATEMENT OF ISSUES TO BE DECIDED

(1) Whether the Court should grant final approval to the proposed class action Settlement; and

(2) Whether the Court should approve the proposed Plan of Allocation.

---

[1]     The Joint Declaration contains a detailed description of the allegations and claims, the history of the Action, and the events that led to the Settlement, among other matters. All exhibits referenced herein are annexed to the Joint Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Joint Decl. Ex. _-_." The first numerical reference is to the designation of the entire exhibit attached to the Joint Declaration and the second alphabetical reference is to the exhibit designation within the exhibit itself.

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff, through its counsel Motley Rice LLC ("Motley Rice") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller," and with Motley Rice, "Lead Counsel"), respectfully submits this memorandum of points and authorities in support of its motion, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, requesting (i) final approval of the proposed settlement of the above-captioned class action (the "Settlement"); and (ii) approval of the proposed Plan of Allocation.[2]

## PRELIMINARY STATEMENT

As detailed in the Stipulation, LeapFrog Enterprises, Inc. ("LeapFrog" or the "Company"), and John Barbour and Raymond L. Arthur (the "Individual Defendants," and with LeapFrog, the "Defendants") have agreed to the payment of $5,500,000 in cash, which has been paid by Defendants' insurers into an interest-bearing escrow account, to secure a settlement of the claims in the Action and dismissal of all Released Claims.  The terms of the Settlement are set forth in the Stipulation, which was previously filed with the Court.  ECF No. 170-1.  This recovery is a very favorable result for the Settlement Class and avoids the risks and expenses of continued litigation, including the risk of recovering less than the Settlement Amount, or no recovery at all.

LeapFrog is an educational entertainment and electronics company based in Emeryville, California.  Lead Plaintiff's claims center on whether LeapFrog deceived investors by delaying the Company's write down of goodwill and long-lived assets, each by one quarter (from the quarter ended September 30, 2014, to the quarter ended December 31, 2014, and from the quarter ended December 31, 2014, to the quarter ended March 31, 2015, respectively).  Lead Plaintiff further alleged that Defendants made materially false and misleading statements and omissions concerning the extent to which LeapFrog inventory built up during the 2013 holiday season and how that build up was affecting the Company's ability to generate revenues from further LeapPad sales, the Company's readiness to launch LeapTV in time to drive revenues during the 2014 holiday season, and LeapFrog's guidance figures on May 5, 2014, June 11, 2014, and August 4, 2014, allegedly in violation of the Securities Exchange Act of 1934.  Lead Plaintiff further alleged that when certain disclosures pertaining to the above were made, LeapFrog's

---

[2]      All capitalized terms not otherwise defined herein have the meanings set forth in the Stipulation.

stock price fell, damaging Settlement Class Members. Defendants have vigorously denied the allegations and are not admitting any wrongdoing in the Settlement.

As described below and in the accompanying Joint Declaration, the decision to settle was informed by over three years of hard fought litigation involving a comprehensive investigation; fact and expert discovery (involving the review of approximately 13,000 pages of core documents from LeapFrog and third-parties, and an expert report); and two rounds of mediated full-day, in-person, and arm's-length negotiations. The mediation sessions were conducted by Hon. James Ware (Ret.), a former judge in this District, who is a well-respected mediator of securities fraud class actions.[3]

The $5.5 million recovery represents approximately 37% of the maximum damages estimated by Lead Plaintiff's damages expert for the upheld portion of the case. *See* Joint Decl. ¶ 83. Lead Counsel, who have extensive experience and expertise in prosecuting securities class actions, believe that the Settlement represents a very favorable resolution of this complex litigation in light of the specific risks of continued litigation. Additionally, Lead Plaintiff, who was actively involved in the Action, including attending one of the two mediation sessions, has approved entry into this Settlement. *See* Decl. of Bart Elst on Behalf of KBC, Joint Decl. Ex. 1.

Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement. In addition, the Plan of Allocation, which was developed with the assistance of Lead Plaintiff's damages expert, is a fair and reasonable method for distributing the Net Settlement Fund and should also be approved by the Court.

## PRELIMINARY APPROVAL AND THE NOTICE PROGRAM

On March 20, 2018, after requesting additional information from the parties and hearing oral argument on Lead Plaintiff's motion, the Court entered an order preliminarily approving the Settlement and approving the proposed forms of notice (the "Preliminary Approval Order"). ECF No. 180.[4] Pursuant to and in compliance with the Preliminary Approval Order, through records maintained by

---

[3]     *See, e.g.*, https://www.jamsadr.com/ware/.

[4]     The Preliminary Approval Order also certified the Settlement Class for settlement purposes only. Nothing has changed to alter the appropriateness of the Court's ruling and the Settlement Class should be finally certified for purposes of the Settlement.

Lead Pl.'s Notice of Mot. & Mot. for Final Approval of Class Action Settlement
& Plan of Allocation of Settlement Proceeds, & Mem. in Supp. Thereof
Case No. 3:15-cv-00347-EMC

3

LeapFrog's transfer agent and information obtained from brokerage firms and other nominee holders of LeapFrog stock, beginning on April 10, 2018, Gilardi & Co. LLC ("Gilardi"), the Court-appointed Claims Administrator, caused the Settlement Notice and Proof of Claim (together, the "Claim Packet") to be mailed to potential Settlement Class Members.  *See* Decl. of Carole K. Sylvester on Behalf of Gilardi ¶¶ 5-8, Joint Decl. Ex. 2 ("Sylvester Decl.").  A total of 37,448 Claim Packets were mailed as of July 24, 2018.  *Id*. ¶ 11.  On April 24, 2018, the Summary Notice was published in *The Wall Street Journal* and was disseminated over *Business Wire*.  *Id*. ¶ 13 and Ex. D attached thereto.  On April 10, 2018, the Settlement Notice and Proof of Claim were posted on the case-dedicated website established by Gilardi for purposes of this Action.  *Id*. ¶ 15.

When approving a class action settlement, a district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  Generally, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition to the requirements of Rule 23, the U.S. Constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement.  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  A notice of settlement satisfies due process when it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id.*; *see also Low v. Trump Univ., LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018) ("'The yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness.'" (quoting *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 772 F.3d 125, 132 (2d Cir. 2014))).  The notice also must "describe 'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Luna v. Marvell Tech. Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at *2 (N.D. Cal. Apr. 20, 2018) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

Here, the Notice, in plain, easily understood language, advises potential Settlement Class Members of the essential terms of the Settlement, sets forth the procedure and deadline for submitting objections to the Settlement and requests for exclusion from the Settlement Class, identifies contacts for

LEAD PL.'S NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
& PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS, & MEM. IN SUPP. THEREOF
CASE NO. 3:15-CV-00347-EMC

4

additional information, and provides specifics regarding the date, time, and place of the Settlement hearing.  The Notice also contains information regarding Lead Counsel's fee and expense requests and Lead Plaintiff's reimbursement request, as well as the proposed Plan of Allocation.  Thus, the Notice provides the necessary information for Settlement Class Members to make an informed decision regarding the Settlement and their rights with respect to it.

Furthermore, the Notice, which the Court approved in the Preliminary Approval Order, includes all of the information required by the Private Securities Litigation Reform Act of 1995 ("PSLRA"): (i) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis"; (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree"; (3) "a statement indicating which parties or counsel intend to make . . . an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought"; (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members"; and (5) "[a] brief statement explaining the reasons why the parties are proposing the Settlement."  15 U.S.C. § 78u-4(a)(7).

The Preliminary Approval Order also approved Lead Plaintiff's proposed notice plan.  ECF No. 180.  Lead Plaintiff has satisfied all of the elements of that notice plan.  *See generally* Sylvester Decl.  The notice program implemented in this litigation constitutes the best notice practicable under the circumstances and satisfied the requirements of due process, Federal Rules of Civil Procedure 23, and the PSLRA.  *See, e.g.*, *DeStefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *7 (N.D. Cal. Feb. 11, 2016) (finding individual notice mailed to class members combined with summary publication constituted "the best form of notice available under the circumstances").[5]

---

[5]     This motion also satisfies the timing requirements set forth in *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010).  *See id.* at 995 (requiring fee motion be made available to class before deadline for objecting to fee).

To date, the Settlement Class's reaction to the proposed Settlement has been overwhelmingly positive.  While the deadline (August 8, 2018) for requesting exclusion or objecting to the Settlement has not yet passed, to date there have been no requests for exclusion, no objections to the proposed Settlement, and no objections to Plan of Allocation.[6]

## ARGUMENT

### I.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE UNDER THE APPLICABLE STANDARDS AND SHOULD BE APPROVED

#### A.   The Standards For Final Approval Of Class Action Settlements

Strong judicial policy favors settlement of class actions.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Indeed, "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also In re ECOtality, Inc. Sec. Litig.*, No. 13-cv-03791-SC, 2015 WL 5117618, at *2 (N.D. Cal. Aug. 28, 2015) ("Despite the importance of fairness, the Court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits.").  Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  Settlements of complex cases such as this one greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of claims.  *See, e.g.*, *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("'Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.'").

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis.  The standard for determining whether to grant final approval to a class action settlement is "whether a proposed settlement is fundamentally fair, adequate, and

---

[6]   A full report on any objections or requests for exclusion submitted in response to the Settlement Notice will be provided with Lead Plaintiff's reply papers on October 11, 2018.

reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 997 (N.D. Cal. 2015) (Chen, J.) (same).   In making this determination, courts in the Ninth Circuit consider and balance a number of factors, including:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[7]

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026); *see also Officers for Justice*, 688 F.2d at 625 (same).   Courts also have considered "the role taken by the lead plaintiff in [the settlement] process, a factor somewhat unique to the PSLRA."   *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007).   Not all of these factors will apply to every class action settlement and, under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval.   *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

The determination of whether a settlement is fair, adequate, and reasonable is committed to the Court's sound discretion.   *See Mego*, 213 F.3d at 458 ("Review of the district court's decision to approve a class action settlement is extremely limited." (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998))).   In applying the pertinent factors, the Court need not reach conclusions about the merits of the case, in part because the Court will be called upon to decide the merits if the action proceeds.   *See Officers for Justice*, 688 F.2d at 625 ("[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. . . . [I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.").   The Court's discretion in assessing the fairness of the settlement is also circumscribed by "'the strong judicial policy

---

[7]      With respect to the seventh factor, there was no governmental investigation or proceeding that assisted with the investigation or prosecution of the Action.

LEAD PL.'S NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
& PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS, & MEM. IN SUPP. THEREOF
CASE NO. 3:15-CV-00347-EMC

7

that favors settlements, particularly where complex class action litigation is concerned.'" *Linney*, 151 F.3d at 1238 (quoting *Officers for Justice*, 688 F.2d at 626); *Class Plaintiffs*, 955 F.2d at 1276 (same).

"[C]ourts afford a presumption of fairness to a settlement if:  (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."  *Mossberg v. IndyMac Fin., Inc.*, No. CV07-1635-GW(VBKx), 2013 WL 12324206, at *2 (C.D. Cal. Jan. 28, 2013) (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

The Settlement readily satisfies the applicable standards for final approval.  It results from serious, arm's-length, mediator-assisted negotiations between the parties, extensive motion practice, and thorough investigation and analysis of the documentary evidence.  The Settlement is fair, reasonable, and adequate given the parties' respective litigation risks.

**B.    Application Of The Ninth Circuit's Criteria Supports Final Approval Of The Settlement**

**1.    The Strength of Lead Plaintiff's Case and the Risks Associated with Continued Litigation**

To determine whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery."  *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).  Although Lead Plaintiff believes that the case against Defendants is strong, that confidence must be tempered by the fact that the Settlement is beneficial and that every case involves significant risk of no recovery, particularly in a complex case such as this one.  However, there was no restatement, parallel governmental investigation, or criminal indictment of LeapFrog or any of the Individual Defendants, which would have aided Lead Plaintiff in proving certain elements of the case, like materiality, falsity, and scienter.  There is no question that to prevail here, Lead Plaintiff would have confronted a number of challenges.  As to the long-lived asset claims upheld by the Court, Lead Plaintiff likely would have had to argue, and the Court would rule on, *Daubert* and summary judgment motions.  Defendants' *Daubert* motions would have

sought the exclusion of each of Lead Plaintiff's experts.  Their summary judgment motion would have sought judgment as a matter of law on each element of Lead Plaintiff's case, i.e., falsity, materiality, scienter, and loss causation.  There was no guarantee that the claims would survive these challenges, and, even if they did, how the Court's rulings would affect the future prosecution of the claims.  Lead Plaintiff's concerns were particularly warranted given the Court had already dismissed many of its claims.  *See* Joint Decl. ¶¶ 13, 83.  At the preliminary approval hearing, the Court confirmed its opinion that dismissal of these claims was appropriate, remarking its belief that "I still believe" "my earlier ruling" "was correct."  Mar. 15, 2018 Hr'g Tr. 3:6-8.

### a.    Business judgment defenses

Defendants have contended that Defendants' decision not to take a write-down of LeapFrog's long-lived assets at the times when Lead Plaintiff alleged they should have been taken was within the bounds of a reasonable exercise of business judgment.  *See* Joint Decl. ¶¶ 80-82.  Defendants also argued that they reasonably relied on an auditor and valuation specialist when reporting LeapFrog's long-lived assets.  *Id.* ¶ 85.  While Lead Plaintiff would contend that it had uncovered evidence to undermine Defendants' likely defense that LeapFrog reasonably relied on auditor and valuation specialist third-parties in conducting impairment analyses, piecing this information together for a jury would have been a substantial undertaking and there were no guarantees that the jury would credit the Lead Plaintiff's interpretation of the evidence over that of Defendants.

### b.    Scienter defenses

Assuming that the alleged statements and omissions survived the summary judgment challenges and were found to have been materially false by the jury, Defendants cannot be liable under the Securities Exchange Act of 1934 for making such statements unless they also acted with scienter—i.e., with knowledge of such falsity, or reckless disregard for whether the statements were true or false.  Here, Defendants have denied that Lead Plaintiff could prove that Defendants knew or recklessly disregarded facts indicating that their public statements about LeapFrog's goodwill and impairment analyses were false because they reasonably relied on advice from an auditor and valuation specialist.  Joint Decl. ¶ 85. A defendant's state of mind in a securities case "is the most difficult element of proof and one that is rarely supported by direct evidence" such as an admission.  *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536

Lead Pl.'s Notice of Mot. & Mot. for Final Approval of Class Action Settlement & Plan of Allocation of Settlement Proceeds, & Mem. in Supp. Thereof
Case No. 3:15-cv-00347-EMC

9

PSG (PLAx), 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (noting scienter is a "complex and difficult [element] to establish at trial").  Proving scienter in this case would have been particularly difficult because, as the Court already noted, "inferring scienter can be challenging where an alleged GAAP violation is complicated and not obvious."  ECF No. 117 at 13.

For example, Defendants likely would procure expert testimony to show LeapFrog had appropriately tested for long-lived asset impairment for the quarter ended December 31, 2014, and that their determination at that time that long-lived assets were not impaired was appropriate.  In response, Lead Plaintiff would seek to present evidence that the Defendants had substantial information to the contrary.  Nonetheless, even if the Court held that there is a genuine issue of material fact as to Defendants' scienter, there of course remained significant uncertainty as to how a jury would ultimately resolve such factual issues if the claims proceeded to trial.

### c.     Loss causation and damages challenges

Another risk in continuing the litigation is the difficulty of proving loss causation and damages, which would have been contested by Defendants at summary judgment and in their *Daubert* motions, and would continue to be challenged at trial and post-trial proceedings and appeals.  *See* Joint Decl. ¶¶ 87-90.  To succeed at trial "a plaintiff [must] prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).  If a jury were to find that any of the alleged corrective disclosures that were upheld by the Court were not truly corrective, the potential recovery for the Settlement Class would be significantly diminished.

Principally, Defendants likely would have argued that investors' losses resulted from LeapFrog's disclosure of poor sales results, the permanent decline in the market for tablets such as LeapPad, issues with carry-forward inventory and LeapTV's delayed release, expectations that fiscal 2016 results could be even worse, and the concession that improvements in the Company's financial performance resulting from new products would not materialize until 2017.  Lead Plaintiff bears the burden of separating the effect of non-fraud factors from the revelation of the alleged fraud and believes that it would have been able to adequately disaggregate damages and that the methodology of its expert is proper, given that its

expert's event study controls for market and industry-wide effects.  However, Defendants likely would have contended that Lead Plaintiff's expert's event study is flawed and should be excluded before trial.

Defendants would also dispute Lead Plaintiff's expert's damages methodology.  Defendants would continue to challenge Lead Plaintiff's expert's analyses, arguing, among other things, that he failed to conduct an adequate analysis to determine which of the challenged statements were material to the market and did not determine which corrective disclosures corrected any particular prior statements.

Lead Plaintiff's expert has estimated maximum aggregate damages to be approximately $14.7 million under the Class Period upheld by the Court, if Lead Plaintiff were to prevail on all of its claims, including all alleged corrective disclosures.  Accordingly, the proposed Settlement represents a recovery of approximately 37% of that amount.  Of course, if Defendants were to prevail at summary judgment on their argument that there is no loss causation, then the Settlement Class would recover nothing at all.  Resolution of these loss causation and damages issues would involve dense and complex testimony of expert witnesses and the parties would end up in a "battle of the experts" where it would be impossible to predict with any certainty which arguments would find favor with a jury.  *See, e.g.*, *Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (approving settlement in securities case and noting "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law" and "[t]he outcome of that analysis is inherently difficult to predict and risky"); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) (approving settlement and noting "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions").  The outcome could well have depended on whose testifying expert the jury believed or even whether the jury was able to follow the economic theories used by the experts.

In sum, as a result of the various defenses described above and in the Joint Declaration, it is possible that, even if the Court or a jury were to find that Defendants knowingly made misleading statements, in the end Settlement Class Members could recover nothing.

Lead Pl.'s Notice of Mot. & Mot. for Final Approval of Class Action Settlement
& Plan of Allocation of Settlement Proceeds, & Mem. in Supp. Thereof
Case No. 3:15-cv-00347-EMC

11

### d.     Previously dismissed claims

The risks of recovering damages for the portion of the Class Period the Court dismissed, May 5, 2014, through January 22, 2015, were even higher, especially in light of the Court's belief, expressed at the preliminary approval hearing, that its earlier ruling dismissing the claims associated with the earlier time period "was correct."  Mar. 15, 2018 Hr'g Tr. 3:6-8.

### i.     Goodwill

Lead Plaintiff alleges that Defendants deceived investors by delaying LeapFrog's write down of goodwill by one quarter (from the quarter ended September 30, 2014, to the quarter ended December 31, 2014), representing that goodwill was not impaired when, in fact, it was.  By the time of settlement, Lead Plaintiff had developed evidence demonstrating that LeapFrog's goodwill was 100% impaired as of September 30, 2014.

But the Court already had dismissed these claims twice, and had stated that the SAC likely would be Lead Plaintiff's last opportunity to amend.  ECF No. 93 at 2.  Thus, there is no assurance the Court would have provided leave to amend to reinstate the goodwill claims.  Even if the Court permitted Lead Plaintiff to amend based on evidence procured in discovery, Defendants likely would have argued that the Ninth Circuit's opinion in *City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.*, 856 F.3d 605 (9th Cir. 2017), which upheld a district court's dismissal of securities fraud based on an allegedly delayed goodwill write down, precluded these claims.

### ii.     LeapPad inventory, LeapTV launch, and financial guidance

Lead Plaintiff also alleges that Defendants misled investors concerning the effects of carryover LeapPad inventory on future sales and the prospects for LeapTV's (delayed) launch during the holiday season, as well as by issuing false guidance.  While Lead Plaintiff could have appealed the Court's dismissal of these allegations, the prospect of successfully reinstating these claims is even less likely than the for the dismissed goodwill claim.  The Court held that many of the allegedly false statements associated with these claims were either predictions or statements of belief protected by the PSLRA's safe harbor provision or were too vague to induce reliance by a reasonable investor.  Further, it held that statements about excess LeapPad inventory were rendered not misleading by Defendants'

Lead Pl.'s Notice of Mot. & Mot. for Final Approval of Class Action Settlement
& Plan of Allocation of Settlement Proceeds, & Mem. in Supp. Thereof
Case No. 3:15-cv-00347-EMC

12

acknowledgments of the problem; statements about the LeapTV launch were unsupported by specific allegations that Defendants knew it would not meet its ship date; and guidance adequately warned about an industry-wide decline and weaker than expected projected results.  *See* ECF No. 88.

### 2. The Complexity, Expense, and Likely Duration of Further Litigation

Final approval is also supported by the complexity, expense, and likely duration of continued litigation.  *See Torrisi*, 8 F.3d at 1376 ("[T]he cost, complexity and time of fully litigating the case all suggest that this settlement was fair.").  "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).

Here, the complexity, expense, and duration of preparing and trying the case before a jury, subsequent post-trial motion practice, and possible appeals of the Court's rulings on class certification, summary judgment, post-trial motions, and a jury verdict would be significant.  In addition, Lead Plaintiff would have to wait until judgment is entered on its upheld long-lived asset claims before seeking any appeal of those claims previously dismissed by the Court.  Barring a settlement, this case likely would be litigated for years, requiring a considerable amount of court time at a substantial cost, with the possibility that the end result would be no better for the class, and might be worse.  *See Zynga*, 2016 WL 537946, at *10 ("[C]ontinuing litigation would not only be costly—representing expenses that would take away from any ultimate classwide recovery—but would also delay resolution and recovery for Settlement Class Members."); *cf. Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)).

The Settlement, therefore, provides sizeable and tangible relief to the Settlement Class now, without subjecting Settlement Class Members to the risks, duration, and expense of continuing litigation. This factor weighs strongly in favor of final approval of the Settlement.

### 3. The Risk of Maintaining Class-Action Status Through Trial

While Lead Plaintiff is confident that the certification of the Settlement Class would have been granted and remained intact through trial, under Rule 23, a court's prior grant of certification "may be

LEAD PL.'S NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
& PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS, & MEM. IN SUPP. THEREOF
CASE NO. 3:15-CV-00347-EMC

13

altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C).  It is possible, therefore, that the Settlement Class could have been decertified or modified if the litigation were to continue.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("Even if the Court were to certify that class, there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class.").

### 4.      The Amount Offered in the Settlement

In evaluating the fairness of a settlement, a fundamental question is how the value of the settlement compares to the amount the class potentially could recover at trial, discounted for risk, delay, and expense.  Accordingly, "'[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'"  *Mego*, 213 F.3d at 459.  Indeed, "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Wal-Mart Stores*, *Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005).

The proposed $5.5 million Settlement is well within the range of reasonableness in light of the potential recovery at trial and the risks of continued litigation.  As noted above, Lead Plaintiff's damages expert has estimated that if liability were to be established with respect to all of the claims upheld by the Court, including the alleged corrective disclosures, the likely maximum aggregate damages recoverable at trial would be approximately $14.7 million.  As a percentage of this maximum estimate of damages, the $5.5 million Settlement represents a recovery of approximately 37%.  Joint Decl. ¶ 83.  Of course, this estimated recovery assumes that Lead Plaintiff would be able to establish damages based on all alleged corrective disclosures upheld by the Court, which would have been vigorously contested by Defendants in connection with summary judgment and would be contested at trial and beyond.[8]

Since the passage of the PSLRA, courts have approved settlements that recovered similar, and much smaller, percentages of maximum damages.  *See, e.g.*, *McPhail v. First Command Fin. Planning,*

---

[8]      Total aggregate damages for the entire Class Period, including for the claims dismissed by the Court, are estimated to be $89 million.  *See* Joint Decl. ¶ 83.  The Settlement represents a recovery of approximately 6.2% of this figure.

*Inc.*, No. 05cv179-IEG-JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding $12 million settlement recovering 7% of estimated damages "weigh[s] in favor of final approval"); *Omnivision*, 559 F. Supp. 2d at 1042 (noting $13.75 million settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement representing "about 3.5% of the maximum damages that Plaintiffs believe[d] could be recovered at trial" and noting amount was "within the median recovery in securities class actions settled in the last few years"). The Settlement also presents a superior recovery when compared to the median percentage of estimated damages recovered in securities class action settlements of less than $25 million in 2017, as calculated by Cornerstone Research, which was reported to be 28.6% in 2017. *See* Joint Decl. Ex. 3 at 8 fig.7. Between 2008 and 2016, the median settlement percentage for cases that settled for less than $25 million was 18.4% of damages. *Id.*

Accordingly, it is respectfully submitted that the Settlement is a favorable result that falls well within the range of reasonableness.

### 5.     The Extent of Discovery Completed and the Stage of the Proceedings

The stage of the proceedings and the amount of discovery completed are also factors courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See Mego*, 213 F.3d at 459. This factor strongly weighs in favor of approval of the Settlement.

At the time the parties agreed to settle, Lead Plaintiff and Lead Counsel had a thorough understanding of the strengths and weaknesses of the claims and defenses asserted. The Action has been hotly contested from its inception, more than three years ago. As a result, Lead Plaintiff's and Lead Counsel's knowledge of the strengths and weaknesses of the claims alleged and the stage of the proceedings are more than adequate to support the Settlement. This knowledge is based on, among other things, Lead Counsel's thorough investigation prior to filing and defending three amended complaints; Lead Counsel's class and fact discovery as well as consultation with forensic accountants; as well as the briefing on class certification.

In particular, Lead Counsel's investigation in connection with the preparation of the amended complaints was comprehensive, involving investigator interviews with former employees of LeapFrog, on a confidential basis.  Joint Decl. ¶ 59.  Additionally, Lead Counsel conducted an extensive review of publicly available information before filing the amended complaints, including documents filed publicly by the Company with the U.S. Securities and Exchange Commission; press releases, news articles, analyst reports, and other public statements concerning LeapFrog's business; and other publicly available information and data concerning the Company, its securities, and the markets therefor.  *Id.* ¶¶ 29, 37.

In connection with formal merits discovery, Lead Counsel engaged in an extremely labor intensive meet and confer process with Defendants on the scope of discovery, and ultimately obtained and analyzed approximately 13,000 pages of core documents from Defendants and non-parties.  *Id.* ¶ 6.  Lead Counsel also worked with experts on issues related to market efficiency and damages.  *Id.* ¶¶ 6, 72.  Furthermore, Lead Counsel understood Defendants' defenses to the claims through the extensive briefing on their motions to dismiss the amended complaints and the positions taken by Defendants in the course of settlement negotiations.  *Id.* ¶¶ 26, 80.

In sum, Lead Plaintiff had a full understanding of the likelihood of success and the potential recovery at trial at the time the Settlement was agreed to.  *See Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (approving settlement when record established "all counsel had ample information and opportunity to assess the strengths and weaknesses of their claims and defenses").  This factor strongly supports final approval of the Settlement.

### 6.  The Experience and Views of Lead Counsel

Experienced counsel, negotiating at arm's length, have weighed the factors discussed above and endorse the Settlement.  As the Ninth Circuit has observed, "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action.  *Rodriquez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  The views of the attorneys actively conducting the litigation and who are most closely acquainted with the facts of the underlying litigation, are entitled to "[g]reat weight."  *Nat'l Rural Telecomms.*, 221 F.R.D. at 528; *see also Zynga*, 2016 WL 537946, at *13 ("'A district court is entitled to give consideration to the opinion of competent counsel that the settlement is fair, reasonable, and adequate.'").

Lead Counsel firmly believe that the Settlement is fair, adequate, and reasonable, and particularly so in view of the risks, burdens, and expense of continued litigation.  Further, it is respectfully submitted that they are experienced and able lawyers in this area of practice, *see* Joint Decl. ¶ 101, ECF No. 174-1 at 23 (Ex. G) & ECF No. 174-2 at 16 (Ex. F), and "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable," *Omnivision*, 559 F. Supp. 2d at 1043.

The Settlement, which was extensively negotiated between the parties and carefully guided by Judge Ware (Ret.), provides a substantial and certain cash benefit to the Settlement Class.  The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" when approving a class action settlement.  *Rodriquez*, 563 F.3d at 965.  Here, the Settlement enjoys a presumption of fairness because it is the product of extensive arm's-length negotiations conducted by experienced and capable counsel with a firm understanding of the strengths and weaknesses of their respective client's positions.  *See Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) ("[T]he fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create[s] a presumption that the agreement is fair."); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

On August 30, 2017, the first face-to-face mediation took place, which was attended by counsel for all parties, and a representative of Lead Plaintiff, who traveled from Belgium to participate in the negotiations.  Before the mediation, the parties provided Judge Ware with comprehensive settlement statements and supporting exhibits identifying key evidence.  Joint Decl. ¶ 65.  The parties attended a second settlement face-to-face mediation with Judge Ware on November 29, 2017.  *Id.* ¶ 78.  At the conclusion of that day, the parties reached an agreement in principle to settle the litigation.  *Id.*

Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).  Here, Judge Ware played a very active role in bringing about the Settlement.

The agreement in principle was followed by extensive negotiations between the parties regarding the detailed terms of the Settlement, including the scope of the releases and the form and content of the

notice to be sent to the Settlement Class.  Joint Decl. ¶ 78.  These facts establish that the Settlement is the result of hard-fought, arm's-length negotiations and "not the product of fraud or overreaching by, or collusion between, the negotiating parties."  *Officers for Justice*, 688 F.2d at 625.  Accordingly, this factor strongly favors approval of the Settlement.

### 7.    Reaction of the Settlement Class to Date

"In evaluating the fairness, adequacy, and reasonableness of settlement, courts also consider the reaction of the class to the settlement."  *Amgen*, 2016 WL 10571773, at *4.  Pursuant to this Court's Preliminary Approval Order, the Court-approved Settlement Notice and Claim Form were mailed to potential Settlement Class Members who could be identified with reasonable effort.  *See* Sylvester Decl. ¶¶ 5-10.  In addition, the Summary Notice was transmitted over the *Business Wire* and published in *The Wall Street Journal* on April 24, 2018, *see id.* ¶ 13, and the Stipulation, Settlement Notice, Claim Form and Preliminary Approval Order were posted to a website dedicated to the Action (www.leapfrogsecuritiesclassaction.com), which became operational on April 10, 2018, *see id.* ¶ 15.

The Settlement Notice advised the Settlement Class of the terms of the Settlement, the Plan of Allocation, and the maximum amount of Lead Counsel's request for an award of attorneys' fees and expenses, as well as the procedure and deadline for filing objections and opting out of the Settlement Class.  *See generally* Ex. 2-A.  The Settlement Notice also provided Settlement Class Members with information on where they could obtain additional information and get answers to their questions.  Ex. 2-A at 9.

To date, 37,448 Claim Packets have been mailed to potential Settlement Class Members and nominees.  Sylvester Decl. ¶ 11.  While the objection/exclusion deadline—August 8, 2018—has not yet passed, to date, no objections and no exclusion requests have been received.  *Id.* ¶ 16.  "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."  *Hanlon*, 150 F.3d at 1027; *see also Retta v. Millennium Prods., Inc.*, No. CV15-1801 PSG AJWx, 2017 WL 5479637, at *6 (C.D. Cal. Aug. 22, 2017) ("'It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.'" (quoting *Nat'l Rural Telecomms.*, 221 F.R.D. at 528-29)).  Of course, "[t]he fact

that some class members object to the Settlement does not by itself prevent the court from approving the agreement." *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001).  The reaction to the Settlement further confirms the reasonableness of the Settlement.[9]

Each of the above factors fully supports a finding that the Settlement is fair, reasonable, and adequate, and therefore deserves the Court's approval.

## II.   THE PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND IS FAIR, ADEQUATE, AND REASONABLE AND SHOULD BE APPROVED

The standard for approval of a plan of allocation in a class action under Rule 23 of the Federal Rules of Civil Procedure is the same as the standard applicable to the settlement as a whole—the plan must be "fair, reasonable, and adequate." *Class Plaintiffs*, 955 F.2d at 1284-85; *see also Omnivision*, 559 F. Supp. 2d at 1045.  An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *See In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005).

Here, Lead Plaintiff, through Lead Counsel and in consultation with Lead Plaintiff's damages expert, prepared the Plan of Allocation after careful consideration of Lead Plaintiff's theories of liability and damages. Joint Decl. ¶¶ 97-101.  The Plan of Allocation was fully described in the Settlement Notice. *See* Ex. 2-A at 10-12.

"'[A] plan of allocation . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'" *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 (SSx), 2013 U.S. Dist. LEXIS 100275, at *29 (C.D. Cal. July 9, 2013) (ellipsis in original).  Here, the Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on "Recognized Loss" formulae tied to liability and damages.  These formulae consider the amount of alleged artificial inflation in the prices of LeapFrog's publicly traded common stock.  *See* Ex. 2-A at

---

[9]   In accordance with the Preliminary Approval Order, should any objections be received prior to the August 8, 2018 deadline, Lead Plaintiff will address them in its reply brief, which will be filed on or before October 11, 2018.

10-12.  The Plan of Allocation considered the movement in the prices of LeapFrog's stock and took into account the portion of the price drops attributable to the alleged fraud and whether Settlement Class Members purchased or acquired LeapFrog securities during the alleged Class Period or the Class Period upheld by the Court.  Joint Decl. ¶¶ 97-101.  Claimants will be eligible for a payment based on when they purchased, held, or sold their LeapFrog stock.

The Claims Administrator will calculate claimants' Recognized Losses using the transactional information provided by claimants in their Claim Forms.  Because most securities are held in "street name" by the brokers that buy them on behalf of clients, the Claims Administrator, Lead Counsel, and Defendants do not have Settlement Class Members' transactional data.

Once the Claims Administrator has processed all submitted claims, distributions will be made to eligible Authorized Claimants.  After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution, Lead Counsel will, if feasible and economical, re-distribute the balance among Authorized Claimants who have cashed their checks.  Re-distributions will be repeated until the balance in the Net Settlement Fund is no longer economically feasible to distribute to Authorized Claimants.  Lead Plaintiff proposes that any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not feasible or economical to reallocate, after payment of any outstanding Notice and Administration Expenses or Taxes, be donated in equal amounts to Bay Area Legal Aid ("BayLegal") and Consumer Federation of America ("CFA")—both of which have programs that assist consumers facing financial fraud.  *See* Stipulation ¶ 7.10.

BayLegal is a non-profit organization that provides free legal assistance to low income residents of the San Francisco Bay Area through offices in Santa Clara, San Mateo, San Francisco, Napa, Marin, Contra Costa, and Alameda Counties.  *See* https://baylegal.org/who-we-are/our-mission/.  BayLegal has a Consumer Protection project that advocates on behalf of allegedly wronged consumers by providing them with direct legal representation in cases concerning, among other things, fair credit reporting, fair debt collection practices, and unfair and deceptive advertising of financial products and services.  *See* https://baylegal.org/what-we-do/stability/consumer-protections/.  *Cy pres* funds from the Settlement can be earmarked for the Consumer Protection project so that they directly assist victims of financial fraud.

BayLegal has been approved as a *cy pres* beneficiary in several securities cases in California, including *In re Celera Corp. Securities Litigation*, No. 10-cv-02604-EJD (N.D. Cal.); *Westley v. Oclaro, Inc.*, No. 11-cv-02448-EMC (N.D. Cal.); and *In re Ubiquiti Networks, Inc. Securities Litigation*, No. 12-cv-04677-YGR (N.D. Cal.).

CFA is a non-profit, consumer advocacy organization established in 1968 to advance consumer interests through policy research, advocacy, and education before the judiciary, Congress, the White House, federal and state regulatory agencies, and state legislatures. *See generally* www.consumerfed.org. With respect to victims of financial fraud, CFA has an Investor Protection program that works nationwide to promote consumer-oriented policies that safeguard investors against fraud through:  (i) the development of educational material for investors; (ii) drafting policies and legislation; and (iii) providing testimony and comments on legislation and regulations.  *See* www.consumerfed.org/issues/investor-protection.  CFA has been approved as a *cy pres* beneficiary in several securities cases in California, including *In re Vocera Communications, Inc. Securities Litigation*, No. 13-CV-03567-EMC (N.D. Cal.); *In re Broadcom Corp. Securities Litigation*, No. 01-CV-00275-MLR (C.D. Cal.); and *In re Ubiquiti Networks, Inc. Securities Litigation*, No. 12-cv-04677-YGR (N.D. Cal.).

Accordingly, for all of the reasons set forth herein and in the Joint Declaration, the Plan of Allocation is fair, reasonable, and adequate and should be approved.

### CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court:  (i) grant final approval of the Settlement; and (ii) approve the Plan of Allocation as fair, reasonable, and adequate.

Dated:  July 25, 2018                     Respectfully submitted,

**MOTLEY RICE LLC**

   */s/ James M. Hughes*
James M. Hughes (*pro hac vice*)
William S. Norton
Christopher F. Moriarty (*pro hac vice*)
28 Bridgeside Blvd.

LEAD PL.'S NOTICE OF MOT. & MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
& PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS, & MEM. IN SUPP. THEREOF
CASE NO. 3:15-cv-00347-EMC

21

Mt. Pleasant, SC  29464
Telephone:  843/216-9000
843/216-9450 (fax)
jhughes@motleyrice.com
bnorton@motleyrice.com
cmoriarty@motleyrice.com

**ROBBINS GELLER RUDMAN**
   **& DOWD LLP**
Shawn A. Williams (213113)
Willow E. Radcliffe (200087)
Matthew Melamed (260272)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
willowr@rgrdlaw.com
mmelamed@rgrdlaw.com

Ellen Gusikoff Stewart (144892)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

*Co-Lead Counsel for Lead Plaintiff*

Lead Pl.'s Notice of Mot. & Mot. for Final Approval of Class Action Settlement & Plan of Allocation of Settlement Proceeds, & Mem. in Supp. Thereof
Case No. 3:15-cv-00347-EMC

22

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on July 25, 2018, I authorized the electronic filing of the foregoing with the

3   Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4   addresses denoted on the attached Electronic Mail Notice List.

5      I certify under penalty of perjury under the laws of the United States of America that the foregoing

6   is true and correct.

7      Executed on July 25, 2018.

8                                               ___/s/ James M. Hughes_____

9                                               **MOTLEY RICE LLC**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lead Pl.'s Notice of Mot. & Mot. for Final Approval of Class Action Settlement
& Plan of Allocation of Settlement Proceeds, & Mem. in Supp. Thereof
Case No. 3:15-cv-00347-EMC